Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1686 | **DATE** | 10/11/2000 |
| **CASE TITLE** | UNITED STATES OF AMERICA vs. ANTHONY BRUNO, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The motion for partial summary judgment [13-1] is granted. Judgment is entered against defendants Anthony and Jean Bruno and in favor of plaintiff United States on the issue of liability. The United States shall submit a proposed final judgment order consistent with this opinion by October 27, 2000. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 13 2000 date docketed | 23 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING 00 OCT 12 PM 5:00 | 10/11/2000 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| SB | courtroom deputy's initials | | jad mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 00 C 1686 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| ANTHONY BRUNO, et al. | ) | |
| | ) | |
| Defendant. | ) | |

**DOCKETED**
**OCT 13 2000**

## MEMORANDUM OPINION AND ORDER

In this tax collection case, the government seeks trust fund penalties for federal withholding taxes from Anthony Bruno as a "responsible person" for OleOle, a bankrupt corporation. In addition, the government seeks to recover personal income taxes assessed against Anthony and Jean Bruno, and to foreclose a tax lien on their real estate in Elmhurst, Illinois. The government moves for partial summary judgment on the issue of liability.

## DISCUSSION

### I   Standard of review

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court must view the record and draw all reasonable inferences in the light most favorable to the nonmoving party. Thomas & Betts Corp. v. Panduit Corp., 138 F.3d 277, 291 (7th Cir. 1998). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific

facts showing there is a genuine issue for trial. Fed. R. Civ. P.56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only disputes that could affect the outcome of the suit will preclude an entry of judgment for the moving party. Thomas & Betts, 138 F.3d at 291.

## II  Federal payroll withholding tax liabilities

### A  Facts

In 1983, Charles Olson hired Anthony Bruno (hereinafter "Bruno") to do legal work on behalf of a corporation, OleOle, he planned to form. Pl. Local Rule 56.1(a)(3) Statement of Facts ("Pl. Facts"), ¶ 5. OleOle was incorporated in 1984. Id. Bruno received shares of OleOle stock in return for his legal services, and was named secretary of the corporation in 1984. Id. at ¶ 7. By April 1985, Bruno was a signatory on OleOle's bank accounts. Id. at ¶ 9. Bruno also invested and made loans to OleOle and personally guaranteed a loan in return for additional shares of stock. Id. at ¶ 10.

By the beginning of 1985, Bruno learned that OleOle was having problems paying its debts. Def. Local Rule 56.1(b)(3) Statement of Facts ("Def. Facts"), ¶ 11. Bruno learned that OleOle had bounced loan payments to a bank. Pl. Facts, ¶ 13. The corporation's vendors and the Internal Revenue Service ("IRS") complained about not being paid. Id.

2

In fall 1985, Bruno was named president of OleOle. Bruno Dep., p. 18-19. Bruno was president until OleOle went out of business in July 1989. Pl. Facts, ¶ 15. He was a member of the board of directors, and chairman at one point. Id. at ¶ 17.

In 1986, OleOle obtained a loan for over $100,000, which Bruno personally guaranteed, to satisfy payroll tax liabilities that OleOle accrued in 1984 and 1985. Id. at ¶ 21-22. On October 16, 1986, Bruno signed an installment agreement to pay the IRS $2,000 per month for the payroll tax liability. Id. at ¶ 23. Bruno signed OleOle's checks to the IRS under the installment agreement. Id. at ¶ 24.

While Bruno was president, OleOle had difficulties paying its employees. Id. at ¶ 26. Bruno loaned the corporation money to meet payroll obligations. Id. Bruno's ownership increased to 49% of OleOle's shares during this period. Id. at ¶ 29. Bruno was one of two individuals who could sign on behalf of the corporation. Def. Facts, ¶ 31. Bruno signed OleOle's checks to pay bills. Pl. Facts, ¶ 32.

On October 24, 1986, the IRS interviewed Bruno. Id. at 33. He admitted he was president of the corporation and he had been involved in corporate meetings regarding nonpayment of federal withholding taxes. Id. He admitted OleOle paid other corporate obligations during the period payroll tax liabilities were accruing from 1985 until the IRS interview. Id. Bruno told the IRS he was responsible for paying and depositing federal withholding taxes from September 1985 through October 1986. Id.

On July 21, 1988, Bruno filed a Chapter 11 bankruptcy petition on OleOle's behalf. Id. at ¶ 43. Bruno remained president of OleOle while it operated in bankruptcy, and continued to sign checks for the corporation during this period. Id. at ¶¶ 44, 45. However, David Herzog, a U.S. Bankruptcy

3

Trustee, became signatory on the corporate bank account. Def. Facts, ¶ 45. OleOle went out of business in July 1989. Pl. Facts, ¶ 46.

The government asserts that because OleOle failed to pay federal withholding taxes, Bruno is personally liable for the full amount of the deficiency. Id. at ¶ 2. The Secretary of the Treasury made assessments against Bruno for $31,327.68 for the quarters of March 31, 1986 through March 31, 1987, and $103,318.44[1] for the quarters from June 30, 1987 through September 30, 1988. Bruno admits he is liable for the trust fund recovery penalty related to unpaid federal withholding tax liability for the first quarter of 1988. Def. Facts, ¶ 33. Bruno also admits he is liable for unpaid withholding taxes for the second through fourth quarters of 1986. Id. at ¶ 42. However, he denies the second and third quarter taxes were unpaid, asserting taxes were paid in full under an agreement with the IRS. Id. Bruno denies any liability for the remaining time periods.

**B   Legal analysis**

Sections 3102 and 3402 of the Internal Revenue Code require an employer to withhold and remit federal social security and income taxes from its employees' wages. The amounts collected from employees' wages are considered to be held by the employer in trust for the United States, and must be paid over quarterly. 26 U.S.C. § 7501; Slodov v. United States, 436 U.S. 238, 244 (1978). While it is not always required that these funds be segregated by the employer prior to payment to the IRS, the law is clear that the funds may not be used by the employer for any other obligations, including operating expenses. Slodov, 436 U.S. at 244; United States v. Kim, 111 F.3d 1351, 1356-57 (7th Cir. 1997).

---

[1] The assessment was $166,941.00, but $63,622.56 was abated by the IRS.

If an employer does not remit withheld payroll taxes, a trust fund recovery penalty may be imposed. Section 6672 provides in part:

> [A]ny person required to collect, truthfully account for, and pay over any tax . . . who willfully fails to collect such tax . . . or truthfully account for and pay over such tax . . . shall . . . be liable for a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for or paid over.

26 U.S.C. § 6672. Under this section, a person must meet two criteria to be personally liable for unpaid withholding taxes for a given quarter. First, he must be "required to collect, truthfully account for, and pay over" the tax. A person meeting this criterion is commonly referred to as a "responsible person." Slodov, 436 U.S. at 245; Kim, 111 F.3d at 1357. Second, it must be established that the responsible person "willfully" failed to collect, account for or pay over the tax owed. Kim, 111 F.3d at 1357. Because the government has assessed Bruno for nonpayment of withholding taxes for the period from March 31, 1986 through September 30, 1987, Bruno bears the burden of production and persuasion to disprove his status as a responsible person who willfully failed to collect, account for, or pay the taxes. Thomas v. United States, 41 F.3d 1109, 1113 (7th Cir. 1994); Kim, 111 F.3d at 1357.

**1. Responsible person status**

A taxpayer is liable as a responsible person under section 6672 "if he retains sufficient control of corporate finances that he can allocate corporate funds to pay the corporation's other debts in preference to the corporation's withholding tax obligations." Thomas, 41 F.3d at 1113. Significant control does not mean exclusive control over disbursal of funds or the final decision whether taxes or bills are paid. Id. The concept of responsibility does not focus on whether a particular taxpayer could himself have paid the taxes. Instead, it focuses on whether the taxpayer could have impeded

the flow of business to the extent necessary to prevent the corporation from squandering taxes it withheld from its employees. Id. Whether Bruno actually exercised his power is irrelevant; it is sufficient to show that he could exercise the power if he chose. Purdy Co. v. United States, 814 F.2d 1183, 1188 (7th Cir. 1987). Indicia of a responsible person include possessing check writing authority and holding corporate office. Thomas, 41 F.3d at 1114.

Under this standard, Bruno fails to meet his burden of proving he was not a responsible person. Bruno was a member of OleOle's board of directors, and was chairman of the board. Bruno was president from fall 1985 until OleOle went out of business. Though Bruno alleges he was not president during some of this period, the evidence is clear that Bruno had substantial authority throughout the period OleOle failed to pay withholding taxes.

When OleOle initially was notified that it had not paid withholding taxes in 1986, it was Bruno who negotiated with the IRS and entered into an agreement to pay OleOle's tax liability. It was Bruno who obtained and personally guaranteed the loan to pay withholding tax liability. Bruno signed checks issued to meet installment payments under the agreement. Bruno loaned OleOle money to meet payroll obligations. He owned 49% of the stock. When OleOle issued checks to pay its bills, Bruno signed them.

This evidence establishes Bruno had substantial authority over OleOle's operations and finances. It is clear Bruno had authority to prevent OleOle from spending the taxes it withheld from its employees. Thomas, 41 F.3d at 1113. Whether he was the only person with this power, or whether he exercised his power to prevent the payment of withholding taxes, is irrelevant. Purdy, 814 F.2d at 1188.

Bruno argues he is not a responsible person under Vinick v. United States, 205 F.3d 1 (1st Cir. 2000). Even if Vinick were controlling, Bruno is still a responsible person. In Vinick, the purported responsible person was not involved in day-to-day management of the company, did not have any input into which creditors the company paid, and did not sign the company's checks issued to pay bills. Id. at 4-12. In contrast, Bruno was president of OleOle and involved himself in its day-to-day affairs, had a say in which of the company's creditors were paid, and signed checks to pay OleOle's bills. Bruno is a responsible person under the Vinick test.

Bruno argues that Godfrey v. United States, 748 F.2d 1568 (Fed. Cir. 1984) supports a finding he is not a responsible person under § 6672. In Godfrey, there was no evidence the purported responsible individual exercised any control over collection, accounting, and payment of the company's taxes. The individual was simply a board member who attempted to help the company out of insolvency. Id. at 1576. Unlike Bruno, he was not president of the company, did not sign the company's tax checks, and did not own a substantial amount of the company's shares.

Finally, Bruno argues summary judgment should not be granted because the IRS assessment is inadequate or incorrect. These considerations are not relevant in determining Bruno's liability. Ruth v. United States, 823 F.2d 1091, 1094 (7th Cir. 1987). Moreover, Bruno has not provided any evidence that the IRS improperly calculated the assessment. Thus, the IRS assessment must be viewed as undisputed.

### 2. Willfulness

"Willful," as the term is used in § 6672, means "voluntary, conscious and intentional – as opposed to accidental – decisions not to remit funds properly withheld to the government." Thomas, 41 F.3d at 1114. A specific fraudulent intent or evil motive is not required. Id. A responsible person

willfully fails to remit withheld taxes to the government if he pays other creditors after he knows of the employer's failure to pay the withheld funds to the IRS. Id. Indeed, a responsible person satisfies the willful standard if he recklessly disregards a known risk that the trust funds may not be paid to the IRS. Id.

Under this standard, Bruno fails to meet his burden of proving he did not willfully fail to pay withholding taxes. Bruno's response asserts his only actual knowledge of a withholding tax problem arose in 1986 and that this knowledge may not be used to impute knowledge or willfulness with respect to other quarters. However, Bruno proffers no evidence he lacked knowledge with respect to the other quarters at issue. Rather, Bruno appears to erroneously believe the government has the burden of establishing his failure to pay withholding taxes is willful. But it is Bruno's burden to show his failure to pay withholding taxes was not willful. Id. at 1113; Kim, 111 F.3d at 1357.

Nor has Bruno disproved that he recklessly disregarded a known risk the trust funds would not be paid. The evidence establishes Bruno met with the IRS in 1986 regarding nonpayment of withholding taxes. "[I]f a responsible officer knows that the corporation has recently committed such a delinquency and knows that since then its affairs have continued to deteriorate, he runs the risk of being held liable if he fails to take any steps either to ascertain, before signing checks, what the state of the tax withholding account is, or to institute effective financial controls to guard against nonpayment." Wright v. United States, 809 F.2d 425, 428 (7th Cir. 1987). When Bruno became aware withholding taxes were not paid, he was put on notice. His use of OleOle's funds for payments to other creditors from that point forward without instituting appropriate safeguards was willful conduct within the scope of § 6672. Id. Bruno bears the burden of proving there were no funds available to pay the IRS for periods withholding taxes were unpaid. Kim, 111 F.3d at 1359. Bruno

has not provided any evidence of insufficient funds to pay withholding tax liability. Therefore, Bruno acted willfully within the meaning of § 6672.

Because Bruno fails to meet his burden of proving that he is not a responsible person or that he did not willfully fail to pay withholding taxes, the government's motion for summary judgment on this claim must be granted.[2]

**III      Personal income tax liability**

The IRS assessed Anthony Bruno for income tax liability on his individual returns for the years 1983, 1984, 1993 and 1995. In addition, the IRS assessed Anthony and Jean Bruno for income tax liability on their joint returns for 1987, 1990, and 1992. The government has submitted certificates of assessment and payments (Form 4340s) with this motion. This satisfies the government's *prima facie* case of tax liability against the Brunos. Treas.Reg. § 301.6203-1; Hefti v. IRS, 8 F.3d 1169, 1172 (7th Cir. 1993). The certificates of assessment and payments raise a presumption of validity and accuracy. Id.

The Brunos have not produced evidence to overcome this presumption. The Brunos simply deny owing the amounts assessed by the IRS in their 56.1(b)(3) statement. An unsupported denial is insufficient to rebut the presumption of validity and accuracy. Under Local Rule 56.1, Bruno is required to provide specific citations to the record. The failure to do so constitutes an admission of the facts in the government's Rule 56 statement. Jupiter Aluminum Corp. v. Home Ins. Co., – F.3d –, 2000 WL 1185514 at *1 (7th Cir. Aug. 22, 2000). The Brunos are deemed to admit the facts set forth by the government with respect to income tax liability.

---

[2] In his response, Bruno asserts that government erroneously assessed withholding tax penalty for the first through third quarters of 1984. The government's motion does not seek a penalty for this period.

The Brunos cite Anthony Bruno's 1987 W-2 and 1040 forms for 1987. Def. Facts, Ex. 9. Much of the exhibit is illegible. Further, the exhibit fails to show the Brunos are not liable for the 1987 assessment. As a result, the Brunos fail to rebut the presumption that the IRS's 1987 assessment is correct.

Anthony Bruno also claims he made a tax payment of $1,000.00 in 1993 that was not reflected in the tax assessment. Def. Facts, ¶ 75. He relies on a 1040 tax form. Def. Facts, Ex. 10. The form indicates that Bruno had an estimated tax payment of $1,000.00 in 1993. However, this is only an estimate calculated by Bruno for future tax payments. There is no proof that Bruno actually made this payment. Bruno submits no check or receipt for his alleged payment. This is insufficient to overcome the presumption that the 1993 tax assessment was correct.

Because the Brunos fail to support their conclusory denials of income tax liability with any evidence, the government's motion for summary judgment is granted with respect to all income tax claims.

**IV    Lien foreclosure**

On March 16, 1979, the Brunos bought real estate in Elmhurst, Illinois. Pl. Facts, ¶ 87. Soon thereafter, the Brunos transferred their interest in the property to a trust with Banco Popular as trustee. Id. at ¶ 88. The Brunos own the entire beneficial interest in the trust. Id. On October 25, 1995, as part of a divorce decree, Anthony Bruno executed a quitclaim deed, conveying his interest in the real estate to Jean Bruno. Id. at ¶ 90. The government contends the Brunos' interest in the property is subject to federal tax liens. The Brunos respond that the liens may only attach to an interest in the property, and that Anthony Bruno currently has no interest in the property because his interest was transferred to Jean Bruno in 1995.

The government is correct. Under I.R.C. § 6321, "if any person liable to pay any tax neglects or refuses to pay the same after the demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to that person." This lien attaches at the time of the assessment. I.R.C. § 6322. Thus, the liens attached to the trust before Anthony Bruno's interest was transferred to Jean Bruno in 1995. The liens then attached to Jean Bruno's interest in the property, to the extent of her tax liability.[3] The later transfer of Anthony Bruno's interest in the property to Jean Bruno did not disturb the federal tax lien's attachment to the interest. United States v. Davenport, 106 F.3d 1333, 1336 (7th Cir. 1997) (citing United States v. Bess, 357 U.S. 51, 57 (1958)). The only question is whether the lien attached to the Brunos' property when the property was placed in trust and legal title was vested in Banco Popular, the trustee.

State law determines a taxpayer's property interest. Id. at 1335 (citing United States v. Rodgers, 461 U.S. 677, 683 (1983). Ownership of property in land trusts for tax purposes rests with the beneficiaries rather than with the trustee. People v. Chicago Title and Trust Co., 75 Ill.2d 479, 492 (Ill. 1979). "When all of the benefits of ownership flow to a particular person, that person is the owner for tax purposes. Complete control is, under the Federal tax statutes, taxable ownership." Id. at 491. This is particularly true when the beneficiaries control the purchase, sale, management and all other aspects of land ownership.

---

[3] The government concedes that Jean Bruno's one-half interest in the property is subject only to her personal tax liabilities, not to those of Anthony Bruno.

The Brunos admit they control the real estate, and do not assert they lacked control over the sale, management and all other aspects of the property. Thus, the property is subject to a federal tax lien.

## **CONCLUSION**

The motion for partial summary judgment on the issue of liability is granted. Defendant Anthony Bruno is liable for a trust fund penalty for the unpaid withholding tax liability of OleOle for the quarters ending March 31, 1986 through September 30, 1988. Defendants Anthony and Jean Bruno are jointly liable for their joint federal income tax assessments for 1987, 1990, and 1992. Defendant Anthony Bruno is liable for his individual tax assessments for 1983, 1984, 1993, and 1995. The Brunos' real property is subject to a federal tax lien.

The United States shall submit a proposed final judgment order consistent with this opinion by October 27, 2000.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

October 11, 2000